UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAO-MSO RECOVERY II, LLC, MSP RECOVERY, LLC, MSPA CLAIMS 1, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MERCURY GENERAL,<br><br>Defendant. | Case Nos. **CV 17-02525-AB (AJWx),** CV 17-2557-AB (FFMx)<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS** |

## I. INTRODUCTION

Plaintiffs MAO-MSO Recovery II, LLC, MSP Recovery, LLC, and MSPA Claims 1, LLC (collectively "Plaintiffs") filed two distinct but factually very similar cases against Defendant Mercury General ("Defendant"). Plaintiffs refer to the first case, Case No. CV 17-2525, as the "No Fault" case, and the second case, Case No. 17-2557, as the "Settlement" case. (*See* Case No. CV 17-2525, Dkt. No. 28 ("No Fault FAC"); Case No. CV 17-2557, Dkt. No. 27 ("Settlement FAC").)

Defendant presently moves to dismiss Plaintiffs' First Amended Complaint in each action. (No Fault Dkt. No. 31; Settlement Dkt. No. 31.) Plaintiffs' filed a combined opposition, (No Fault Dkt. No. 34; Settlement Dkt. No. 34), and Defendant

1.

filed identical replies in both cases, (No Fault Dkt. No. 35; Settlement Dkt. No. 35). The Court heard oral argument on the Motions on October 27, 2017, and took the matters under submission. After considering the arguments of counsel, and for the following reasons, the Court **GRANTS** Defendant's Motions.

## II.  BACKGROUND

Both cases arise out of Defendant's alleged failure to pay or reimburse Medicare Advantage Organizations ("MAO") for payments made by the MAOs on behalf of Medicare beneficiaries who were also separately insured by Defendant. (No Fault FAC ¶¶ 1–2; Settlement FAC ¶¶ 1–2.) Plaintiffs contend that under the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b), Defendant, as the "primary payer", was obligated to pay these claims first or reimburse the MAO if it paid the claim first. (*Id.*) Plaintiffs claim that numerous MAOs have assigned their rights to assert these causes of action to Plaintiffs. (No Fault FAC ¶¶ 44–46; Settlement FAC ¶¶ 41–43.)

### A. History of Relevant Law

In 1980, Congress passed the MSPA to reduce the costs of Medicare. *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995). Prior to the Act's passage, Medicare often acted as a primary insurer; that is, Medicare paid for enrollees' medical expenses, even when an enrollee carried other insurance that covered the same costs, or when a third party had an obligation to pay for them. The MSPA, as its name suggests, changed that relationship so that Medicare acts as a secondary payer. "This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay." *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002). The MSPA prohibits Medicare from paying for items or services if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-

insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). If, however, a primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly," Medicare may make a payment on the enrollee's behalf, conditioned on reimbursement from the primary plan. *Id.* § 1395y(b)(2)(B)(i); *see also Cochran*, 291 F.3d at 777 ("In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay, if that other source is not expected to pay promptly.").

Though the MSPA uses the term "primary plan" to describe entities with a primary responsibility to pay, that term covers more than just health insurance plans. The law defines a "primary plan" as "a group health plan or large group health plan . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A). Thus, Defendant in this case—an automobile insurance no-fault carrier—is a primary plan within the meaning of the MSPA.

The mechanics of the reimbursement process are set out in the statute as follows. The law requires a primary plan to reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). The statute explains how that responsibility may be demonstrated:

> responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

*Id.* This is the demonstrated responsibility requirement; in other words, Medicare may

obtain reimbursement from a primary plan if it demonstrates that the primary plan "has or had a responsibility" to pay for the item or service. To facilitate recovery of these payments, the law provides for a right of action by the United States, for double damages, against "any or all entities that are or were required or responsible" to make payment under a primary plan. *Id.* § 1395y(b)(2)(B)(iii).

In addition to the right of action by the United States, Congress created a private cause of action against a primary plan that fails to provide for primary payment. *Id.* § 1395y(b)(3)(A). Like the cause of action provided to the United States, the private cause of action also permits the plaintiff to recover double damages. *Id.*

### B. The No Fault and Settlement Actions

The No Fault FAC alleges that Defendant, as the no-fault insurance provider for certain Medicare beneficiaries, was required to pay for or reimburse Plaintiffs for payments made on behalf of Medicare beneficiaries injured in automobile accidents. Plaintiffs explain the situation as follows: Medicare beneficiaries were involved in automobile accidents and suffered injuries as a result. (No Fault FAC ¶ 51.) Following the accidents, the beneficiaries provided their Medicare insurance card to the medical provider. (*Id.* at ¶ 34.) The bills were ultimately submitted to Medicare, and a MAO paid the bill. (*Id.* at ¶¶ 34, 53.) However, because the beneficiaries are also covered by a no-fault insurance policy that includes medical expenses issued by Defendant, Defendant was obligated to pay for the medical expenses resulting from the accidents. (*Id.* at ¶¶ 38–43, 67–76.) Plaintiffs now seek reimbursement from Defendant for the payments they made on behalf of the Medicare beneficiaries. Plaintiffs assert a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), (*id.* at ¶¶ 65–79), and breach of contract by way of subrogation under 42 C.F.R. § 411.24(e), (*id.* at ¶¶ 80–85).

Similarly, in the Settlement case, Plaintiffs assert that as a result of settlement

4.

agreements entered into by Defendant and injured Medicare beneficiaries, Defendant was obligated to pay or reimburse the MAOs for expenses paid on behalf of the beneficiaries (as opposed to the No Fault case, in which liability was based on Defendant's status as the beneficiaries' no-fault insurance provider).[1]  In the Settlement case, Plaintiffs allege that following automobile accidents, Defendant entered into settlement agreements with injured Medicare beneficiaries that provided coverage for medical expenses. (Settlement FAC ¶¶ 3, 48, 51–53.)  These settlement agreements "turn[ed] Mercury into a 'primary payer' for the medical expenses paid for by the MAO and obligate[] reimbursement." (Dkt. No. 34 ("Opp'n") at 6; Settlement FAC ¶ 48.)  Here, Plaintiffs assert only a private cause of action under 42 U.S.C. § 1395y(b)(3)(A). (Settlement FAC ¶¶ 57–67.)

### III. LEGAL STANDARD

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction affects the court's power to hear a case, parties cannot waive it, and the court must dismiss an action if it lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); *Csibi v. Fustos*, 670 F.2d 134, 136 n.3 (9th Cir. 1982).

By contrast, a motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l. v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss, the court assumes the truth of all factual allegations and construes them in the light most favorable to the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). The court may dismiss, however, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

A defendant can make either a facial or factual challenge to a plaintiff's

---

[1] This is the sole distinguishing factor between the two cases.

standing. A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). A factual attack, by contrast, disputes the veracity of the plaintiff's allegations that would otherwise, if taken as true, invoke federal jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

## IV. DISCUSSION
### A. Plaintiffs Lack Article III Standing

The Supreme Court has frequently explained that standing is an essential and unchanging part of Article III's case-or-controversy requirement for federal jurisdiction. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). Thus, if Plaintiffs lack standing, the Court must dismiss their claim for lack of subject matter jurisdiction. *Cetacean Community v. Bush*, 386 F.3d 1169, 1175 (9th Cir.2004). To show Article III standing, Plaintiffs must demonstrate (1) injury in fact; (2) a traceable connection between the alleged injury in fact and the alleged conduct of defendant; and (3) redressability of the alleged injury. *Vermont*, 529 U.S. at 771.

Defendant argues that Plaintiffs lack standing to bring this action because they fail to allege facts establishing that MAOs validly assigned them the statutory rights they seek to enforce, and therefore, they have suffered no injury. (Mot. at 13.) Defendant further claims that the assignment of rights to recover statutory penalties is prohibited under California law. (*Id.*) In arguing that California law applies, Defendant claims that the MSPA "does not address whether [the private cause of action for double damages] can be assigned to a third party." (*Id.* (citing 42 U.S.C. § 1395y(b)(3)(A). Thus, this "gap" in the statute requires application of state law to the issue. (*Id.*)

First, Plaintiffs respond that their allegations are sufficient because the law does not require them to plead all the information Defendant claims is missing. Next, Plaintiffs contend that "there is no gap to fill" and thus no need to apply state law. (Opp'n at 10.) Plaintiff argues that federal law governs the assignability of public contracts, and that the only existing prohibition does not apply. The prohibition states that "the party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party." (*Id.* (citing 41 U.S.C. § 6305).) Plaintiffs explain that courts have interpreted this prohibition to apply to "an assignment of the underlying contract between the MAO and [Center for Medicare and Medicaid Services], but *not* the MAOs assignment of its private cause of action created by federal statute." (Opp'n at 10 (citing *MSP Recovery LLC v. Allstate Ins. Co.*, 835 F.3d 1352, 1358 (11th Cir. 2016) (explaining that MSPA claims were not claims on the MAO's contract with the government, which merely permits it to provide insurance plans that offer Medicare benefits)).)

The Court agrees that the prohibition on the assignability of public contracts does not apply in this case because there is no assignment of the *contract* between the Government and the MAOs. *See MSP Recovery LLC*, 835 F.3d at 1357–58. Here, Plaintiffs claim to be the assignees of the MAO's statutory *right* to recover double damages under 42 U.S.C. § 1395y(b)(3)(A). Assignments of rights are governed by state law. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 520–21 (1988).

At this stage, Plaintiffs need only allege facts that if proved, would confer standing upon them. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003); *Oaktree Capital Mgmt., L.P., v. KPMG*, 963 F. Supp. 2d 1064, 1081 (9th Cir. 2013). However, as argued by Defendant in their Reply, the FAC contains "no facts to support the purported assignments, let alone facts demonstrating Florida law should apply." (Reply at 11.) Rather, it is only offered as an argument in Plaintiff's Opposition. (Opp'n at 9–11.) Therefore, the Court cannot assume as true

7.

that the assignment was made and is being performed in Florida.

Further, "[i]n an action involving an assignment, a court must ensure that the plaintiff-assignee is the real party in interest with regard to the particular claim involved by determining: (1) what has been assigned; and (2) whether a valid assignment has been made." *In re Brooms*, 447 B.R. 258, 265 (9th Cir. 2011). However, Plaintiffs' bare allegation that "MAOs have assigned their recovery rights to assert the causes of action alleged in th[ese] Complaint[s] to Plaintiff . . . [and] [a]s part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendants" is insufficient to determine whether a valid assignment has been made. (No Fault FAC ¶¶ 44–46; Settlement FAC ¶¶ 41–43; c*f. In re Brooms*, 447 B.R. at 264 (stating the court "did not err when it ordered Carter to produce documents reflecting the terms of the assignment between Carter and Jorgenson").) *See also MVP Asset Mgmt. (USA) LLC v. Vestbrik*, No. 2:10–cv–02483–GEB–CMK, 2012 WL 33043, at *3 (E.D. Cal. Jan. 6, 2012) (finding plaintiff's allegations insufficient even where date and parties to the assignment were alleged). The Court is not obliged to accept as true Plaintiffs' legal conclusions that the assignments exist and are valid; Plaintiffs must allege facts sufficient to support these contentions, such as the identity of the MAOs whose reimbursement rights they claim to own, the dates of the assignments, and the essential terms. *See MAO-MSO Recovery II, LLC et al. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 1:17-cv-21996-UU, Dkt. No. 65 (S.D. Fla. Oct. 10, 2017);

Although Plaintiffs claim that *Oaktree Capital Management* is helpful to Plaintiffs, it is distinguishable from the instant matters. There, the court noted that "defendants are not questioning the validity of the assignment, but instead, whether plaintiffs pled sufficient facts regarding the assignment." 963 F. Supp. 2d at 1080. Here, however, Defendant is challenging the validity of the assignments. Further, the

court in *Oaktree* found that, based on the allegations in the complaint, the defendant could "reasonably infer the who, what, and when of the assignments." 963 F. Supp. 2d at 1081. There, the plaintiffs alleged "(a) they ha[d] received assignments from the clients identified in the certificate of interested parties, (b) the assignments [we]re valid, (c) they received them before the complaint was filed, and (d) the assignments cover claims arising out of the clients' purchases of Shengda notes." (*Id.*) These allegations are much more substantial than the allegations before this Court: Plaintiffs have not specifically alleged the identities of the assignors, whether the assignments were valid, or whether the assignments were received before the complaint was filed.

Accordingly, the Court finds that the FACs lack sufficient facts to allow it to infer the validity of the assignments. The Court **GRANTS** Defendant's Motions to Dismiss for lack of subject matter jurisdiction.

### V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motions to Dismiss the No Fault FAC, (Case No. 17-2525 Dkt. No. 31), and the Settlement FAC, (Case No. 17-2557 Dkt. No. 31), for want of standing. The FACs are hereby **DISMISSED**. Plaintiffs may attempt to cure the deficiencies by filing a Second Amended Complaint in each action no later than fourteen (14) days from the issuance of this order. Plaintiffs are notified that this action may be dismissed with prejudice under Federal Rule of Civil Procedure 41(b) if Plaintiffs fail to file amended complaints within the prescribed time period.

//

//

//

//

//

//

9.

Accordingly, the Court **DENIES as moot** Defendant's motion to stay discovery until the pleadings are at issue. (Dkt. No. 33.) Discovery shall be stayed until amended complaints are filed.

**IT IS SO ORDERED.**

Dated: November 2, 2017

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE