1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                      CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 MAO-MSO RECOVERY II, LLC, et al., | Case Nos.: **CV 17-02525-AB (AJWx),** CV 17-02557-AB (AJWx) |
| 12          Plaintiffs, | |
| 13 v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINTS [52]** |
| 14 MERCURY GENERAL, | |
| 15          Defendant. | |
| 16 | |
| 17 | |

18

## I.    INTRODUCTION

Plaintiffs MAO-MSO Recovery II, LLC, MSP Recovery, LLC, MSPA Claims 1, LLC, and MSP Recovery Claims Series LLC (collectively "Plaintiffs") filed two cases against Defendant Mercury General ("Defendant"): Case No. CV 17-2525, the "No Fault" case, and Case No. 17-2557, the "Settlement" case.  (*See* Case No. CV 17-2525, Dkt. No. 47 ("No Fault SAC"); Case No. CV 17-2557, Dkt. No. 48 ("Settlement SAC").)

Defendant moves to dismiss Plaintiffs' Second Amended Complaint ("SAC") in each action.  (No Fault Dkt. No. 52; Settlement Dkt. No. 52.)  Plaintiffs filed an Opposition, (No Fault Dkt. No. 64; Settlement Dkt. No. 64), and Defendant replied,

(No Fault Dkt. No. 67; Settlement Dkt. No. 67).  The Court heard oral argument on February 9, 2018, and took the matter under submission.

At the hearing, Plaintiffs' counsel stated they would produce the actual assignments in an effort to appease the Court and defense counsel regarding their validity.  The Court subsequently ordered Plaintiffs to produce the documents and ordered the parties to file supplemental briefs on any issues remaining following production of the assignments.  (*See* Dkt. No. 73.)  Defendant filed its supplemental brief on March 16, 2018, and Plaintiffs responded on April 5, 2018.  (Dkt. Nos. 81, 91.)  The Court subsequently granted Plaintiffs' request for a hearing on the parties' supplemental briefing and held another hearing on May 11, 2018.

Having carefully reviewed the materials submitted by the parties and the arguments presented during oral argument, and for the reasons indicated below, the Court **DENIES** Defendant's Motions to Dismiss.

## II.    BACKGROUND

Both cases arise out of Defendant's alleged failure to reimburse Medicare Advantage Organizations ("MAO") for payments made by the MAOs on behalf of injured Medicare beneficiaries.  (No Fault SAC ¶¶ 2–5; Settlement SAC ¶¶ 1–4.)  Plaintiffs contend that, under the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b), Defendant was obligated to pay these claims, or reimburse the MAO if it paid the claim.  (*Id.*)  Numerous MAOs have allegedly assigned their right to assert these claims to Plaintiffs.  (No Fault SAC ¶¶ 51–131; Settlement SAC ¶¶ 47–127.)

### A. A Concise History of Relevant Law

In 1980, Congress passed the MSPA to reduce the costs of Medicare.  *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995).  Prior to the Act's passage, Medicare often acted as a primary insurer; that is, Medicare paid for enrollees' medical expenses, even when an enrollee carried other insurance that covered the same costs,

or when a third party had an obligation to pay for them.  The MSPA, as its name suggests, changed that relationship so that Medicare acts as a secondary payer.  "This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay."  *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002).  The MSPA prohibits Medicare from paying for items or services if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance."  42 U.S.C. § 1395y(b)(2)(A)(ii).  If, however, a primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly," Medicare may make a payment on the enrollee's behalf, conditioned on reimbursement from the primary plan.  *Id.* § 1395y(b)(2)(B)(i); *see also* Cochran, 291 F.3d at 777 ("In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay, if that other source is not expected to pay promptly.").

Though the MSPA uses the term "primary plan" to describe entities with a primary responsibility to pay, that term covers more than just health insurance plans. The law defines a "primary plan" as "a group health plan or large group health plan . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance."  42 U.S.C. § 1395y(b)(2)(A).  Thus, Defendant in this case—an automobile insurance no-fault carrier—is a primary plan within the meaning of the MSPA.

The mechanics of the reimbursement process are set out in the statute as follows.  The law requires a primary plan to reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service."  42 U.S.C. § 1395y(b)(2)(B)(ii).  The statute explains how that

responsibility may be demonstrated:

> responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

*Id.*  Thus, Medicare may obtain reimbursement from a primary plan if it demonstrates that the primary plan "has or had a responsibility" to pay for the item or service.  To facilitate recovery of these payments, the law provides for a right of action by the United States, for double damages, against "any or all entities that are or were required or responsible" to make payment under a primary plan.  *Id.* § 1395y(b)(2)(B)(iii).

In addition to the right of action by the United States, Congress created a private cause of action against a primary plan that fails to provide for primary payment.  *Id.* § 1395y(b)(3)(A).  Like the cause of action provided to the United States, the private cause of action also permits the plaintiff to recover double damages. *Id.*

## B. The No Fault and Settlement Actions

Generally, the No Fault SAC alleges that Defendant was required to reimburse MAOs for payments made by the MAO on behalf of certain Mercury customers who were injured in automobile accidents.  (No Fault SAC ¶¶ 5–6.)  Plaintiffs explain the situation as follows: Medicare beneficiaries were injured in automobile accidents.  (*Id.* ¶ 134.)  Although the beneficiaries were covered by Medicare, they also had no-fault insurance policies issued by Defendant.  As the no-fault insurance provider for the beneficiaries, Plaintiffs contend that Defendant was obligated to pay for the medical expenses resulting from the accidents.  (*Id.* ¶¶ 133–37.)  However, Defendant did not

pay the medical costs following the accidents; instead, the beneficiaries' MAO paid the bill. (*Id.* ¶ 136.) Many MAOs have allegedly assigned their rights to assert the instant clams to Plaintiffs. Accordingly, Plaintiffs now seek reimbursement from Defendant for payments the assignee MAOs made on behalf of unnamed injured beneficiaries. In the No Fault case, Plaintiffs assert a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), (*id.* ¶¶ 148–62), and breach of contract by way of subrogation under 42 C.F.R. § 411.24(e), (*id.* ¶¶ 163–68).

Similarly, in the Settlement case, Plaintiffs assert certain individuals insured by Defendant were involved in automobile accidents with Medicare beneficiaries. (Settlement SAC ¶ 130.) The beneficiaries suffered injuries as a result of these accidents and their MAOs paid for their medical expenses. (*Id.*) Following the accidents, the insured tortfeasors entered into settlement agreements with the injured beneficiaries. (*Id.*) Thereafter, Defendant issued payments pursuant to the settlement agreements. (*Id.*) According to Plaintiffs, these payments demonstrate "Defendant's responsibility to reimburse Plaintiffs . . . under the Medicare Act for the medical expenses of the Medicare beneficiaries that arose out of the accidents." (*Id.*) Plaintiffs assert only a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) in the Settlement case. (*Id.* ¶¶ 139–49.)

### III.   LEGAL STANDARD

#### a.   Standing

Article III standing is jurisdictional and, therefore, a threshold inquiry. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). To establish standing, a plaintiff must show that (1) he suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury was caused by, or is fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560–61 (1992).  Generally, a plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party.  *Pony v. Cty. of Los Angeles*, 433 F.3d 1138, 1145 (9th Cir. 2006).  However, "the assignee of a claim has standing to assert the injury in fact suffered by the assignor."  *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000).  Thus, "the assignee stands in the shoes of the assignor, and, if the assignment is valid, has standing to assert whatever rights the assignor possessed."  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014).

A defendant can make either a facial or factual challenge to a plaintiff's standing.  A facial attack is one in which subject matter jurisdiction is challenged solely on the allegations in the complaint, attached documents, and judicially noticed facts.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the complaint."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  In the case of a facial attack, the Court is required to accept as true all factual allegations set forth in the complaint.  *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

In contrast, a factual attack (or a "speaking motion") is one in which subject matter jurisdiction is challenged as a matter of fact, and is based on evidence outside of the pleadings.  *Safe Air*, 373 F.3d at 1039.  In assessing the validity of a factual attack, the Court is not required to presume the truth of the plaintiff's factual allegations.  *Id.* at 1039.

Here, Defendants originally made a facial challenge to the SACs.  (*See* No Fault Dkt. No. 52 ("Plaintiffs lack standing unless they can adequately plead that MAOs possessed the recovery rights at issue and validity assigned those rights to Plaintiffs.").)  To survive this facial challenge to standing, the SACs must include "general factual allegations of injury resulting from the defendant's conduct.  *See Safe*

*Air*, 373 F.3d at 1039 (in a facial attack under Fed. R. Civ. P. 12(b)(1), "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction").  However, Defendant's supplemental briefing appears to make a factual attack by arguing that certain assignments are invalid.  (*See* No Fault Dkt. No. 79 (using the heading "The Assignments Do Not Validly Transfer The Reimbursement Rights Plaintiffs Assert Against Mercury").)  The Court discusses each argument below.

### b.  Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (2009).  The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint.  *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    DISCUSSION

### A. Plaintiffs' Failure to Comply with the Local Rules

The Local Rules require the parties in a non-sealed civil case to seek permission from the Court before filing documents under seal.  L.R. 79-5.2.2.  Defendant points out that Plaintiffs filed their SACs with redactions without seeking Court approval.  Plaintiffs admit they did not specifically seek approval prior to filing their SACS, but claim that "redactions were not only appropriate, but expressly allowed by the Court.".  (*See* MTD Opp'n at 13.)  Plaintiffs also state that they provided Defendant with unredacted copies of the SACs prior to filing and have attached unredacted copies to their Opposition, thereby mooting any issues the initial redactions may have caused.  (*Id.*)

At the October 27, 2017 hearing on Defendant's first motion to dismiss, the Court acknowledged that redactions may be appropriate.  However, the Court did not give Plaintiffs permission to disregard the Local Rules with respect to their subsequent filings.  Plaintiffs general inattention to the Local Rules and this Court's Standing Order is unacceptable and shows a lack of respect for the Court.  No further violations will be tolerated absent good cause therefore.[1]

### B. Plaintiffs' Amendments Do Not Exceed the Scope of the Court's Leave to Amend

Courts in this circuit "generally allow plaintiffs to add new claims and/or parties to an amended complaint where a prior order of dismissal granted leave to amend without limitation."  *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13–cv–01025–MCE–AC, 2014 WL 49245253, at *3 (E.D. Cal. Sept. 29, 2014).  On the other hand, where a prior court order granted limited leave to amend, district courts in this circuit generally strike new claims or parties contained in an amended

---

[1]  At the February 9, 2018 hearing, Plaintiffs' counsel apologized for these errors and ensured that no further violations would occur.  The Court acknowledges that counsel has since made a more concerted effort to comply with the rules.

8.

complaint when the plaintiff did not separately seek leave to amend.  *See, e.g.*, *Benton v. Baker Hughes*, No. CV–12–07735–MMM, 2013 WL 3353636 (C.D. Cal. June 30, 2013); *Crane v. Yarborough*, No. CV 05–8534–DSF, 2012 WL 1067956 (C.D. Cal. Mar.29, 2012).  Thus, whether a district court will accept new claims and/or parties in an amended complaint after a motion to dismiss will depend on whether the plaintiff was granted leave to amend with or without limitation.  *Urista v. Bank of America, N.A.*, No. C11–03097–HRL, 2012 WL 10596, at *3 (N.D. Cal. Jan. 3, 2012).  Courts look at the specific language of the prior order to determine whether or not leave to amend was granted without limitation.

When the language of an order clearly states that a plaintiff may only amend to address certain deficiencies identified in the order, courts have held that a plaintiff is barred from adding new claims or parties.  For example, in *Benton v. Baker Hughes*, the court found that the order did not grant plaintiff leave to add new claims when the order stated that plaintiff "may file an amended complaint addressing the deficiencies identified herein."  2013 WL 3353636, at *3.  In *DeLeon v. Wells Fargo Bank, N.A.*, the court similarly found that the plaintiff was not allowed to add new claims to the complaint when its previous order only granted leave to amend with respect to certain claims to give the plaintiff an opportunity to allege more facts.  No. 10–CV–01390–LHK, 2010 WL 4285006, *3 (N.D. Cal. Oct. 22, 2010).

Here, the Court dismissed Plaintiff's FACs for lack of standing.  In their SACs, Plaintiffs replaced "MSP Recovery, LLC" with "MSP Recovery Claims, Series LLC".  Plaintiffs argue they made this change specifically to address the Court's concerns regarding standing.  (MTD Opp'n at 15.)  Plaintiffs state that "MSP Recovery Claims, Series LLC is now the assignee of most of the Plaintiffs' reimbursement rights under the MSP laws."  (*Id.*)  Accordingly, Plaintiffs assert that the amendment was within the scope of the Court's leave to amend.

Defendant argues that adding MSP Recovery Claims, Series LLC was improper

because Plaintiffs "cannot add or drop parties without Mercury's written consent or the Court's leave." (No Fault SAC at 21; Settlement SAC at 19–20.) Specifically, Defendant claims this substitution "exceeds the scope of the Court's leave to amend because adding new claims brought by a new Plaintiff is ***not*** an attempt to cure the existing Plaintiffs' lack of standing." (*Id.*)

Technically, Defendants statement is true: adding a new plaintiff does not cure the defects in the *original* Plaintiffs' standing. The Court will need to assess the new allegations to determine whether Plaintiffs have cured the defects previously noted. However, the Court dismissed the FACs without prejudice, stating that "Plaintiffs may attempt to cure the deficiencies by filing a Second Amended Complaint." (No Fault Dkt. No. 46; Settlement Dkt. No. 47.) The Court's language of "attempt to cure *the* deficiencies" is undoubtedly less clear than the language in the aforementioned cases where leave to amend was granted with limitation. As such, the Court is not persuaded by Defendant's contention that its language precludes Plaintiffs' amendment. Plaintiffs were directed to cure standing and they contend the addition of this new plaintiff was necessary to do so. For these reasons, and because the federal rules counsel in favor of a liberal amendment policy, and such a policy serves the goals of judicial efficiency, the Court declines to dismiss Plaintiffs' SACs on the grounds that the amendments exceed the scope of the Court's leave.

### C. Plaintiffs Adequately Allege Standing

"[A]t this stage of the pleading, [Plaintiff] need only show that the facts alleged, if proved, would confer standing upon [it]." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). Here, to demonstrate injury in fact, Plaintiffs must plead facts showing (1) that the MAOs themselves suffered an injury in fact (i.e., the MAOs were not reimbursed for their enrollees' medical expenses by defendant who was responsible for primary payment under the MSPA); and (2) that the MAOs validly assigned their rights of recovery to Plaintiffs. *MAO–MSO Recovery II, LLC v.*

*Boehringer Ingelheim Pharm., Inc.* ("*Boehringer*"), No. 1:17–CV–21996–UU, 2017 WL 4682335, at *4 (S.D. Fla. Oct. 10, 2017).

Defendant argues Plaintiffs have not alleged injury in fact because their "allegations are insufficient to show that the assignor-MAOs possessed the recovery rights at issue and validly assigned those rights to Plaintiffs." (No Fault Dkt. No. 52 ("No Fault MTD") at 15–16; Settlement Dkt. No. 52 ("Settlement MTD") at 14–15.) Defendant takes issue with Plaintiffs "illustrative claims" because Plaintiffs "do not even allege that the Medicare beneficiaries had any [personal injury protection] coverage through Mercury, much less that such coverage would apply to the medical services at issue." (No Fault MTD at 16.) In its supplemental brief, Defendant picks out four assignment agreements from those recently produced and generalizes that "most" of the assignments do not relate to any underlying claim against Defendant, are not actually assignments at all, or require consent for subsequent assignments. (Dkt. No. 81 at 9–15.)

Plaintiffs contend that the facts alleged in the SACs are sufficient to demonstrate that the MAOs were entitled to reimbursement under the MSPA and have validly assigned their reimbursement rights to Plaintiffs. (Dkt. No. 64 ("MTD Opp'n") at 10.) In both the No Fault case and the Settlement case, Plaintiffs allege that Defendant is a primary payer under the MSPA and is obligated to pay or reimburse MAOs for payments made on behalf of covered Medicare beneficiaries. (*See* No Fault SAC ¶ 5; Settlement SAC ¶ 17.) Plaintiffs further assert that MAOs made payments on behalf of covered beneficiaries and that Defendant has not reimbursed the MAOs for these expenses. (No Fault SAC ¶¶ 6, 137; Settlement SAC ¶¶ 4, 130–31.) Plaintiffs SACs include illustrative claims that give the initials of Medicare beneficiaries who were injured and whose MAOs paid their medical expenses even though Defendant was allegedly the primary payer. (*See* No Fault SAC ¶ 140, Settlement SAC § 135.) Plaintiffs' unredacted SACs also include numerous

paragraphs identifying the date of and parties to the purported assignments. (*See* No Fault SAC ¶¶ 51–131; Settlement FAC ¶¶ 47–127.)

Taken together, these allegations are sufficient to show injury in fact. With respect to the newly added assignment allegations, the facts alleged also allow the Court to infer the who, what, and when of the assignments. *See Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1081 (D. Nev. 2013) (assignment allegations are generally sufficient when they allow the court to "reasonably infer the who, what, and when of the assignments"); *see also MAO-MSO Recovery II, LLC et al. v. Farmers Ins. Exchange, et al.*, Case Nos. 2:17–cv–02522–CAS(PLAx)2:17–cv–02559–CAS(PLAx), 2018 WL 2106467, at *7–8 (C.D. Cal. May 7, 2018) (finding substantially similar allegations generally sufficient to show injury in fact and validity of assignments). More is not required at this stage. While Defendant points to certain assignments under which Plaintiffs may ultimately not be entitled to recover, the Court is not persuaded that dismissal is warranted at this time, and Plaintiffs' supplemental briefing rebuts Defendant's arguments with respect to the four challenged assignments.

First, Plaintiff explains that the Freedom Health and America's First Choice assignments were erroneously produced and do not pertain to this case. (*See* Dkt. No. 91 at 4.) Thus, these assignments are irrelevant to the issue of whether Plaintiffs have standing. Second, Plaintiffs produced the wrong PMPI assignment but realized their mistake and produced the correct one thereafter. (*Id.* at 8.) Thus, the unsigned PMPI agreement also does not weigh on whether Plaintiffs have standing. Third, as to the SummaCare assignment, the Court is unpersuaded that it is merely a contingency fee agreement that does not convey standing to sue. The idea that Plaintiffs will remit a portion of the proceeds back to SummaCare following reimbursement does not change the fact that SummaCare assigned its rights to Plaintiff. *See Sprint Commc'ns Co. v. APPC Servs., Inc.*, 554 U.S. 269, 284 (2008) (noting "that suits by assignees for

collection have long been seen as 'amenable' to resolution by the judicial process").
Lastly, Defendant's arguments regarding subsequent assignability of the SummaCare
assignment are also unavailing.  The language of the assignment purports to allow
internal assignments without approval.  (*See* Dkt. No. 91 at 6.)

Accordingly, the Court finds Plaintiffs have sufficiently alleged that (1) the
MAOs suffered an injury in fact and (2) assigned their reimbursement rights to
Plaintiffs.  *See MAO-MSO Recovery II, LLC v. Gov't Emps. Ins. Co.,* Nos. PWG-17-
711, PWG-17-964, 2018 WL 999920, at *12–15) (D. Md. Feb. 21, 2018) (finding
allegations sufficient where the plaintiffs asserted they were assigned the rights they
now assert in these cases); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exchange*
("*Farmers*"), Nos. 2:17–cv–02522–CAS(PLAx), 2:17–cv–02559–CAS (PLAx), 2017
WL 5634097, at *7 (C.D. Cal. Nov. 20, 2017) (finding very similar allegations were
"generally sufficient to demonstrate injury in fact"); *Boehringer*, 2017 WL 4682335,
at *4 (finding injury in fact sufficiently pleaded where the plaintiff alleged: (1) the
MAOs' enrollees suffered injuries, and the MAOs paid for treatment of those injuries;
(2) the enrollees entered into settlement agreements with defendants; and (3)
defendants had not reimbursed the MAOs for the cost of the enrollees' treatment).
Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Plaintiffs' SACs on
the grounds that Plaintiffs' fail to adequately allege standing.

### 1.  "Non-MAO Assignors"

Lastly, the Court addresses Defendant's point regarding Plaintiffs' "new"
allegation that, in addition to MAOs, "HMOs, MSOs and IPAs" also assigned their
rights to Plaintiffs.  (*See* No Fault SAC ¶ 51.)  Defendant states that these entities are
not "secondary payers" under the MSPA.  (No Fault SAC at 16–17; Settlement SAC
at 15.)  Defendant provides no explanation for this conclusory assertion.  However, in
its supplemental brief, Defendant cites *MSP Recovery Claims, Series LLC v. ACE
American Insurance Co.*, No. 17-CV023749, 2018 WL 1547600, at *4–5 (S.D. Fla.

Mar. 9, 2018), for the proposition that these entities cannot assert a private cause of action under § 1395y(B)(3)(A).

There, the court examined three cases that discussed whether certain plaintiffs qualified as "private parties" under § 1395y(B)(3)(A).  Based on those three cases, the *Ace American* court concluded that only Medicare beneficiaries, healthcare providers who initially treated a Medicare beneficiary, and MAOs can assert a private cause of action under the statute.  *Id.*  Respectfully, the Court disagrees with the ultimate conclusion that these are *only* parties permitted to assert a private cause of action under the statute.  It does not automatically follow that the statute only applies in those circumstances merely because courts found that it *was* applicable in those circumstances.

As the Court understands it, HMOs are considered MAOs by the Centers for Medicare and Medicaid Services ("CMS").  If HMOs *are* MAOs, and MAOs are undisputedly recognized as secondary payers, it follows that HMOs are also secondary payers.  *See* https://www.medicare.gov/pubs/pdf/11474.pdf; *see also Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016) (holding that MAOs may assert a private cause of action under § 1395y(B)(3)(A)).

Technically, MSOs and IPAs are considered "first-tier" or "downstream" entities under the MSPA, meaning they contract with MAOs or related entities to provide certain services for Medicare enrollees.  *See* 42 C.F.R. § 422.2.  Thus, it may be somewhat inaccurate to simply refer to all these entities as MAOs, despite Plaintiffs' suggestion that doing so is "common in the industry."  (MTD Opp'n at 11.)  However, this does not necessarily mean that these entities do not have the same ability to assert a private right of action under the statutes as MAOs; the first-tier and downstream entities would suffer the same injury as MAOs when a primary payer failed to pay or reimburse them.  Without explanation from Defendant as to why this is not the case, the Court rejects the contention that HMOs, MSOs, and IPAs are not

14.

secondary payers.[2]

### D. The Sufficiency of Plaintiffs' Allegations

Given that the Court refused to dismiss the SACs for failure to comply with the Local Rules, found the amendments to be within the scope of the leave previously granted, and found Plaintiffs adequately alleged standing, the Court now considers Defendant's Rule 12(b)(6) arguments.

#### a. The Settlement SAC Sufficiently Alleges Defendant Is a Primary Plan and Had Responsibility to Pay

Defendant argues the Settlement SAC's "vague and conclusory" allegations are inadequate to state a valid claim against Defendant. Specifically, Defendant contends Plaintiffs fail to show Defendant is a primary plan or demonstrate Defendant had a responsibility to pay. (Settlement Dkt. No. 52 at 21–23.) According to Defendant, Plaintiffs "continue to allege claims against 'Mercury General, a California company, its subsidiaries and affiliates,' which is a holding company and does not issue insurance policies." Thus, Defendant argues that Plaintiffs do not allege what kind of coverage Defendant allegedly provided, or "identify any policies that Mercury allegedly underwrote." (*See* Settlement MTD at 21–22.) Defendant cites *Hope v. Fair Acres Geriatric Ctr.*, 174 F. Supp. 3d 880, 891 (E.D. Pa. 2016) to support its contention that Plaintiffs' allegations are insufficient. There, the plaintiff merely alleged that "Defendants and/or its insurer are primary plans under the Act." *Id.* The *Hope* court held that this allegation was a conclusion of law not entitled to the presumption of truth and dismissed the plaintiff's claim.

A private cause of action under the MSPA is available when a primary plan

---

[2] Because Plaintiffs' SACs refer to all entities as MAOs without specifically identifying which ones are HMOs, MSOs, or IPAs, the Court also refers to all the entities as MAOs throughout this Order.

fails to make a required payment.  42 U.S.C. § 1395y(b)(3)(A).  Primary plans include a group health plan or large group health plan, a workman's compensation law or plan, an automobile or liability insurance policy or plan, or no fault insurance.  42 U.S.C. § 1395y(b)(2)(A).  In the Settlement SAC, Plaintiffs allege that Defendant was "ultimately responsible for paying" certain expenses, with a footnote to 42 U.S.C. § 1395y(b)(2)(A), which explains what entities qualify as primary plans.  (Settlement SAC ¶ 3.)  Although this allegation is conclusory, Plaintiffs also provide that Defendant insured certain individuals who were involved in car accidents with Medicare beneficiaries.  (*Id.* ¶¶ 17, 130.)  The Court accepts as true Plaintiffs contention that Defendant insured the tortfeasors.  Accordingly, the inference that can reasonably be made from this allegation and Plaintiff's ultimate conclusion that Defendant is a primary plan is that Defendant is a primary plan *because* it provided insurance to the tortfeasors.  Thus, the Court finds Plaintiffs allegations sufficient to show Defendant is a primary plan.

Second, a primary plan " shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service."  42 U.S.C. § 1395y(2)(B)(ii) (emphasis added).  "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means."  *Id.*  In *MSP Recovery, LLC v. Allstate Insurance Company* ("*Allstate*"), 835 F.3d 1351, 1359–60 (11th Cir. 2016), the Eleventh Circuit held that the phrase "other means" permitted demonstration of responsibility by a contractual obligation.  There, the court noted "[t]he plain language of the MSP Act indicates that at least some contractual obligations—namely,

settlement agreements—are sufficient to demonstrate responsibility." *Allstate*, 835 F.3d at 1361.

Here, Plaintiffs specifically allege that Defendants made payments pursuant to settlement agreements and that these payments demonstrated their responsibility to pay. (Settlement SAC ¶ 130.) These allegations are sufficient to allege the element of demonstrated responsibility in the Settlement SAC. Therefore, the Court **DENIES** Defendant's Motion to Dismiss the Settlement SAC. (Settlement Dkt. No. 52.)

### a. The No Fault SAC Is Sufficiently Pleaded

#### i. Payments by Medicare Are Conditional Where a Primary Payer Fails to Pay

As to the No Fault SAC, Defendant also argues there are no facts to show it had primary payment responsibility or failed to make required reimbursements. (No Fault SAC at 24–26.) Defendant contends the MSPA prohibits Medicare from making payments for which primary payers are responsible, and essentially asserts that payments by Medicare are only permitted where there is no primary payer. (No Fault MTD at 23.) Defendant also suggests that the conditional payment "exception" does not apply because Plaintiffs fail to allege that the MAOs satisfied the prerequisites for conditional payments. (*Id.* at 24.)

In opposition, Plaintiffs argue that payments made by Medicare are automatically conditional, regardless of whether Medicare knew of an overlapping primary plan when it made the payment. (MTD Opp'n at 16.) *See Fanning v. United States*, 346 F.3d 386, 389 (3d Cir. 2003) ("When Medicare makes a payment that a primary plan was responsible for, the payment is merely conditional and Medicare is entitled to reimbursement for it.").

The MSPA "assigns primary responsibility for medical bills of Medicare recipients to private health plans when a Medicare recipient is also covered by private insurance. These private plans are therefore considered 'primary' under the MSP and

Medicare acts as the 'secondary' payer responsible only for paying amounts not covered by the primary plan." *Fanning*, 346 F.3d at 389. Thus, the MSPA bars Medicare payments where "payment has already been made or can reasonably be expected to be made" by a primary plan. 42 U.S.C. § 1395y(b)(2)(A) (parenthetical in original). However, the MSPA provides that "when Medicare makes a payment that a primary plan was responsible for, the payment is merely conditional and Medicare is entitled to reimbursement for it." *Id.* (citing 42 U.S.C. § 1395y(b)(2)(B)). Medicare payments are subject to reimbursement to the appropriate Medicare Trust Fund once the government receives notice that a third-party payment has been or could be made with respect to the same item or service. 42 U.S.C. § 1395y(b)(2)(B)(i).

Here, Plaintiff alleges that Defendant—the no-fault insurance provider for the injured beneficiaries—is a primary payer. MAOs paid the injured beneficiaries medical expenses because they did not know about the primary plan coverage; without knowledge of the coverage, it cannot be said that payment by Defendant could "reasonably be expected to be made." Accordingly, the Court finds Plaintiffs have sufficiently alleged that the payments made by its MAOs were conditional. Defendants remaining arguments with respect to conditions precedent are discussed below.

### ii.  Defendant's Obligation Is Not Contingent on Whether Beneficiaries Notified MAOs of Primary Plans

Next Defendant argues that that Plaintiffs were required to plead satisfaction of certain prerequisites for reimbursement. Defendant cites 42 C.F.R. 411.51 for the proposition that MAOs can seek reimbursement "only where the insurer has denied the claim or the beneficiary is physical or medically incapacitated." (No Fault MTD at 24.) However, this portion of the statute relates to Medicare *beneficiaries'* duties, not MAO's duties. Further, a beneficiary's duty to help seek reimbursement is not dispositive as to whether Defendant owes an obligation to reimburse the MAOs.

Under the MSPA, the obligation to reimburse Medicare arises when a primary insurer is demonstrated liable, not when it is informed of its duty to pay. 42 U.S.C. § 1395(y)(2)(B)(i). Because the obligation to pay arises by statute, and because Congress has created a private cause of action to enforce the MSPA, any lack of action by a beneficiary has no bearing on whether Defendant owes an obligation to Plaintiffs.

### iii. Plaintiffs Adequately Plead "Demonstrated Responsibility"

Defendant contends that Plaintiffs "have not alleged a prior judgment or agreement to pay," and "cannot demonstrate payment responsibility by alluding to unidentified contracts covering unidentified accidents." (No Fault MTD at 25.) Plaintiffs counter that 42 U.S.C. § 1395y(b)(2)(B)(ii) allows demonstration of responsibility by "other means", which courts have interpreted to include contractual obligations. Thus, Plaintiffs claim Defendant had a responsibility to pay because the injured Medicare beneficiaries had no-fault insurance policies issued by Defendant.

As noted above, a primary plan " shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service." 42 U.S.C. § 1395y(2)(B)(ii) (emphasis added). "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id.*

In *MSP Recovery, LLC v. Allstate Insurance Company* ("*Allstate*"), 835 F.3d 1351, 1359–60 (11th Cir. 2016), the defendants made similar arguments as those advanced by Defendant here, including that the existence of a contract does not necessarily demonstrate responsibility, and that the plaintiffs may be seeking to

recover for injuries not covered under the policies.  (*See* No Fault MTD at 25–26.)
However, the Eleventh Circuit held that the phrase "other means" permitted
demonstration of responsibility by a contractual obligation.  There, the court
noted"[t]he plain language of the MSP Act indicates that at least some contractual
obligations—namely, settlement agreements—are sufficient to demonstrate
responsibility.  We see no reason that other types of agreements—such as insurance
contracts—should be treated differently."  *Allstate*, 835 F.3d at 1361.  In reaching this
conclusion, the court relied on the "eminently reasonable" interpretation of the statute
by CMS, which listed contractual obligations as a means of demonstrating
responsibility.  *Id.*

Again, the Court finds the Eleventh Circuit's analysis persuasive.  Requiring a
contractual obligation to be reduced to a judgment or settlement before it can be used
to demonstrate responsibility leaves the phrase "by other means" meaningless and is
contrary to CMS's specific reference to contractual obligations.  Here, Plaintiffs have
alleged that Defendant's no-fault insurance contracts render Defendant responsible for
primary payment of the expenses Plaintiffs seek to recover.  These allegations are
sufficient to demonstrate responsibility at the pleading stage.  *Accord Allstate*, 835
F.3d at 1361 ("This does not relieve Plaintiffs of their burden to allege in their
complaints, and then subsequently prove with evidence, that Defendants' valid
insurance contracts actually render Defendants responsible for primary payment of the
expenses Plaintiffs seek to recover.  And Defendants may still assert any valid
contract defense in arguing against their liability.  We hold only that a contractual
obligation may satisfy the demonstrated responsibility requirement, not that the
existence of a contractual obligation conclusively demonstrates liability under the
MSP Act's private cause of action.").

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss the No Fault
SAC.  (No Fault Dkt. No. 52.)

### E. The MSPA's Private Cause of Action Extends to MAOs

Defendant also argues that, regardless of whether the Court finds Plaintiffs' allegations sufficient, the MSPA "should not be interpreted to afford a private right of action to MAOs." (No Fault MTD at 26.) Defendant argues that Congress specifically addressed MAO's reimbursement rights in 42 U.S.C. § 1395w, which allows MAOs to pursue reimbursement under contract principles. (*Id.*) Further, Defendant asserts that the Ninth Circuit "may not follow" *In re Avandia Marketing, Sales Practices, & Products Liability Litigation* ("*Avandia*"), 685 F.3d 353 (3d Cir. 2012), which held that MAOs could assert a private cause of action for double damages. Defendant relies on *Parra v. Pacificare of Arizona, Inc.*, to support this contention. 715 F.3d 1146, 1154 (9th Cir. 2013).

In *Parra*, a decedent's wife and children sought injunctive relief and a declaration that health insurance provider PacifiCare—a MAO—was not entitled to reimbursement from the wrongful death payments they received from GEICO. *Id.* at 1150. PacifiCare relied on *Avandia* in arguing that the MSPA authorized it to bring a private cause of action against the beneficiaries' survivors for reimbursement. *Id.* at 1154. However, the Ninth Circuit noted that "[t]he Private Cause of Action applies 'in the case of a primary plan which fails to provide for primary payment.'" *Id.* (citing 42 U.S.C. § 1395y(b)(3)(A)). The court explained that "PacifiCare makes no claim against GEICO, the primary plan, nor has that plan failed to provide for payment." *Id.* Thus, the Ninth Circuit acknowledged that the unique circumstances at issue in *Parra* were distinguishable from *Avandia*, and did not weigh on whether *Avandia* was correctly decided.

Similarly, the factual differences between the instant case and *Parra* make *Parra*'s holding inapplicable here. There, the Ninth Circuit found the MSPA private cause of action did not apply because the plaintiffs were not suing a primary payer who had failed to provide primary payment. Here, Plaintiffs *are* attempting to sue a

primary payer who allegedly failed to provide primary payment.  Therefore, the Court is not persuaded that the holding in *Parra* applies.

Further, CMS regulations state that a "[MAO] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter."  42 C.F.R. § 422.108(f).  This language supports the conclusion that MAOs, like the Secretary, may assert a private cause of action.  In addition, both the Third and Eleventh Circuits have held that MAOs may assert a private cause of action under the MSPA to recover conditional payments made on behalf of its enrollees.  *See Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1236–37 (11th Cir. 2016) (undertaking a detailed analysis of the relevant provisions and concluding § 1395y(b)(3)(A) permits MAOs to assert a private cause of action); *In re Avandia Mktg., Sales Practices, & Prods. Liab. Litig.*, 685 F.3d 353 at 367 (finding that § 1395y(b)(3)(A) "unambiguously provide[s] Humana with a private cause of action," and that "even if the statute's text were deemed to be ambiguous, [the Court] would apply *Chevron* deference and would reach the same conclusion.").  Based on the language of the regulation, and the persuasive reasoning of the Third and Eleventh Circuits, the Court finds that MAOs may assert a private cause of action pursuant to § 1395y(b)(30(A).

**F.  Plaintiffs' Subrogation Claim Is Proper Under 42 C.F.R. § 411.26**

Lastly, Defendant argues that 42 C.F.R. § 411.26 permits only CMS—not MAOs—to bring a subrogation claim.  However, as noted above, MAOs may "exercise the same rights to recover from a primary plan, entity or individual as the Secretary exercises under the MSP regulations."  42 C.F.R. § 422.108(f).  Accordingly, it follows that MAOs may assert a right to subrogation in the same manner that traditional Medicare would.  Again, Defendant's reliance on *Parra* is misplaced because *Parra* is inapplicable for the reasons set forth above.

### G. Defendant's Local Rule 23-3 Arguments Are Addressed Separately in Connection With Plaintiff's Motion to Reset the Class Certification Deadline

Defendant asks the Court to strike Plaintiff's class allegations because Plaintiff failed to comply with Local Rule 23-3.  Local Rule 23-3 requires parties seeking class treatment to file a motion for class certification within ninety days of service of the complaint, unless otherwise ordered by the Court.  Here, Plaintiffs served Defendant with the No Fault FAC on April 5, 2017.  (No Fault Dkt. No. 14.)  Thus, it has been over five months since Plaintiffs were required to move for class certification.  They have not done so or requested an extension of time to do so.  Defendant argues that Plaintiffs cannot show excusable neglect for their failure to comply with the Local Rules.

On December 22, 2017, approximately two weeks after Defendant raised the instant argument in its Motion to Dismiss, Plaintiffs filed a Motion to Reschedule Class Certification Deadline.  (Dkt. No. 60.)  Plaintiffs did not fully address the Rule 23-3 issue in their Opposition, and instead ask the Court to defer ruling on it until it decides their Motion to Reschedule.  The Court will address the issue separately in order to best address the parties contentions; however, it must be noted that Plaintiffs' repeated failure to comply with the Local Rules has resulted in voluminous and unnecessary motion practice that strains the Court's limited resources.  As stated above, the Court will not tolerate further noncompliance.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss the Second Amended Complaint in Case No. 17-25 25 (No Fault SAC) and **DENIES** Defendant's Motion to Dismiss the Second Amended Complaint in Case No. 17-2557 (Settlement SAC).

Because the pleadings are now at issue, Defendant's Motion to Stay Discovery

Until the Pleadings are at Issue, (Dkt. No. 59), is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated: May 23, 2018

_____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

24.