# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MAO-MSO RECOVERY II, LLC, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>MERCURY GENERAL,<br><br>                              Defendant. | Case No. CV 17-02525-AB (AFMx),<br>CV 17-02557-AB (AFMx)<br><br>**ORDER DISMISSING CASES FOR LACK OF STANDING** |

## I.  INTRODUCTION

Before the Court are the following Motions: (1) Plaintiffs MAO-MSO Recovery II, LLC, MSPA Claims 1, LLC, and MSP Recovery Claims Series LLC's (collectively, "Plaintiffs") Motions for Class Certification (Dkt. Nos. 285, 286, 294; Dkt. Nos. 325, 326, 334, 335); (2) Defendant Mercury General's ("Defendant") Motions to Exclude Opinion Testimony of Plaintiffs' Expert Michael Arrigo (Dkt. Nos. 305, 345); (3) Defendant's Motions to Exclude Opinion Testimony of Plaintiffs' Expert Richard Sabetta (Dkt. Nos. 306, 346); (4) Defendant's Motions to Exclude Opinion Testimony of Plaintiffs' Expert Witness Daniel L. Regard II (Dkt. Nos. 308, 348).  The parties' opposed the respective Motions and filed replies.

1.

The Court considered all the materials filed, held oral arguments twice, ordered supplemental briefing on standing, and subsequently took the matters under submission. For the reasons stated below, the Court **DISMISSES** the cases for lack of standing and **DENIES AS MOOT** the pending Motions.

## II.    BACKGROUND

Both cases arise out of Defendant's alleged failure to reimburse Medicare Advantage Organizations ("MAO") for payments made by the MAOs on behalf of injured Medicare beneficiaries. (Dkt. No. 47, ("No Fault SAC") ¶¶ 2–5; Dkt. No. 48 ("Settlement SAC") ¶¶ 1–4.) Plaintiffs contend that, under the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b), Defendant was obligated to pay these claims, or reimburse the MAO if it paid the claim. (*Id.*) Numerous MAOs have allegedly assigned their right to assert these claims to Plaintiffs. (No Fault SAC ¶¶ 51–131; Settlement SAC ¶¶ 47– 127.)

Generally, the No Fault SAC alleges that Defendant was required to reimburse MAOs for payments made by the MAO on behalf of certain Mercury customers who were injured in automobile accidents. (No Fault SAC ¶¶ 5–6.) Plaintiffs explain the situation as follows: Medicare beneficiaries were injured in automobile accidents. (*Id.* ¶ 134.) Although the beneficiaries were covered by Medicare, they also had no-fault insurance policies issued by Defendant. As the no-fault insurance provider for the beneficiaries, Plaintiffs contend that Defendant was obligated to pay for the medical expenses resulting from the accidents. (*Id.* ¶¶ 133–37.) However, Defendant did not pay the medical costs following the accidents; instead, the beneficiaries' MAO paid the bill. (*Id.* ¶ 136.) Many MAOs have allegedly assigned their rights to assert the instant clams to Plaintiffs. Accordingly, Plaintiffs now seek reimbursement from Defendant for payments the assignee MAOs made on behalf of unnamed injured beneficiaries. In the No Fault case, Plaintiffs assert a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), (*id.* ¶¶ 148–62), and breach of contract by way of subrogation under 42 C.F.R. § 411.24(e), (*id.* ¶¶ 163–68).

1    Similarly, in the Settlement case, Plaintiffs assert certain individuals insured by

2 Defendant were involved in automobile accidents with Medicare beneficiaries.

3 (Settlement SAC ¶ 130.) The beneficiaries suffered injuries as a result of these

4 accidents and their MAOs paid for their medical expenses. (*Id.*) Following the

5 accidents, the insured tortfeasors entered into settlement agreements with the injured

6 beneficiaries. (*Id.*) Thereafter, Defendant issued payments pursuant to the settlement

7 agreements. (*Id.*) According to Plaintiffs, these payments demonstrate "Defendant's

8 responsibility to reimburse Plaintiffs . . . under the Medicare Act for the medical

9 expenses of the Medicare beneficiaries that arose out of the accidents." (*Id.*) Plaintiffs

10 assert only a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) in the

11 Settlement case. (*Id.* ¶¶ 139–49.)

12    The Court previously denied Defendant's Motions to Dismiss these cases,

13 finding for purposes of the Complaint, Plaintiffs had plausibly alleged standing.  (Dkt.

14 Nos. 106, 107). Several years later and after much discovery, the Court allowed the

15 parties leave to file updated briefing on class certification to include the new

16 discovery.  (Dkt. Nos. 279, 319.)  While reviewing the briefing on class certification,

17 the Court became aware of potential issues involving standing, particularly whether

18 Plaintiffs had alleged injury in fact.  The Court held a hearing on class certification,

19 during which it raised these issues and ultimately ordered supplemental briefing on

20 standing.  (Dkt. Nos. 338, 378.) Specifically, the Court requested Plaintiffs to address

21 "whether there is evidence showing an injury-in-fact (by way of exemplar(s)) and

22 whether this injury was caused by Defendant's improper refusal to pay."  (Dkt. Nos.

23 338, 378 at 2.)

24    Plaintiffs submitted their briefing and Defendant filed a response. (Dkt. Nos.

25 355, 357; Dkt. Nos. 395, 397.)  The Court held oral argument on July 30, 2021 and

26 took the Motions for Class Certification along with the Motions to Exclude Testimony

27 under submission.

28 ///

3.

### III.   LEGAL STANDARD

"[N]o principle is more fundamental to the judiciary'' proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). The familiar test for Article III standing requires a plaintiff to show an injury-in-fact. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). And the Supreme Court has made clear that the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case [which] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The "irreducible constitutional minimum" of standing consists of showing plaintiff (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 560-61.  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

### IV.   DISCUSSION

### A. Plaintiffs' Statutory Private Cause of Action Does Not Automatically Confer Standing

As a threshold matter, during oral argument, Plaintiffs' counsel argued that Plaintiffs have a statutory private cause of action such that they have standing to sue. However, this argument seemingly conflates two distinct inquiries: Even assuming that Plaintiffs have a statutory private cause of action, they must also show injury in

4.

fact in order for this Court to have subject matter jurisdiction. In other words, both
Article III standing *and* a cause of action are necessary to establish a case or
controversy over which the Court has jurisdiction. *See Raines v. Byrd*, 521 U.S. 811,
820 n.3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ("It is settled that Congress cannot
erase Article III's standing requirements by statutorily granting the right to sue to a
plaintiff who would not otherwise have standing.") Thus, for the sole purpose of this
Order, the Court will accept Plaintiffs' position that they have a statutory private cause
of action under the MSPA. However, this does not end the standing analysis.

**B. Plaintiffs Have Failed to Show Injury in Fact.**

The central question the Court has grappled with since the inception of these
cases is whether Plaintiffs have shown injury in fact, and it previously granted
Defendant's Motion to Dismiss for lack of standing. (Dkt. Nos. 46, 47.)  Plaintiffs
filed a Second Amended Complaint, and the Court then denied Defendant's Motion to
Dismiss and found Plaintiffs' had plausibly alleged the "who, what, and when of the
assignments" and that "[m]ore [was] not required at this stage."  (Dkt. Nos. 106, 107
at 12.)

However, the briefing on class certification—which the Court allowed the
parties to update after class discovery—raised issues about the exemplar claims as
pled in the Second Amended Complaint.  First, the evidence presented by Defendant
in its Opposition to Class Certification seemed to indicate that the exemplar claims did
not demonstrate Defendant failed to pay for a reason forbidden by the MSP Act or that
Defendant even had an obligation to pay. (Opp. at 11-21.) Second, Defendant's
Opposition pointed to potential issues with the underlying assignments and the
exemplar claims. (*Id.* at 7, 27.) Finally, Defendant noted that even though Plaintiffs
had created spreadsheets of data matches, this alone does not indicate that Defendant
failed to pay, thus causing an injury in fact to Plaintiffs. (*Id.* at 2, 25.) In other words,
Defendant indicated that there were at least three potential issues with whether
Plaintiffs had shown injury in fact.

5.

Because "federal courts are required *sua sponte* to examine jurisdictional issues such as standing," the Court ordered supplemental briefing and held oral argument to determine whether there was evidence of injury-in-fact. *B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir. 1999); *see also* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") Further, to the extent the Court treats Defendant's filings as a factual attack (or a "speaking motion"), in which subject matter jurisdiction is challenged as a matter of fact and is based on evidence outside of the pleadings, the Court is not required to presume the truth of the plaintiff's factual allegations. *Safe Air*, 373 F.3d at 1039. After extensive review and consideration of the parties' filings and arguments, the Court finds that Plaintiffs lack standing and the Court thus lacks jurisdiction.

i.   **Plaintiffs Have Failed to Establish They Possess Recovery Rights to Either of the Alleged Exemplar Claims.**

The Second Amended Complaints allege two specific instances of concrete injury where Defendant allegedly failed to reimburse Plaintiffs for reasons prohibited by the MSP Act:

> J.R. and D.M. were receiving Medicare benefits from an MAO whose right to recover under the MSP Act has been assigned to Plaintiffs . . . and were involved in automobile accidents that required medical services []. Plaintiffs' MAOs paid for those medical expenses. Defendant, however, did not pay or reimburse the MAOs for those expenses within the requisite time frame, as required of a primary payer.

(No Fault SAC ⁋ 140; Settlement SAC ⁋ 135.)

While Plaintiffs indicate that the individuals in the SACs are for exemplar purposes only, the Court nonetheless has an obligation to determine if these claims provide any basis to show concrete injury in fact. Plaintiffs have the burden of establishing standing, and injury in fact hinges upon *both* the assignment of rights *and* the underlying claims. An assignment in and of itself cannot confer standing absent

6.

1    allegations of MSPA violations, and conversely, a claim in and of itself is insufficient

2    unless Plaintiffs own the recovery rights for the claim. *See Lujan v. Defs. of Wildlife*,

3    504 U.S. at 560-61 ("injury in fact" requires both "legally protected interest" and

4    "concrete and particularized" harm).

5                    **1.  Plaintiffs Have Not Demonstrated A "Legally Protected Interest"**

6                         **in Recovery Rights Regarding D.M.'s Claim**

7           D.M.'s claim involves his Medicare Part C coverage and Defendant's alleged

8    failure to reimburse Freedom Health Care ("Freedom"). (Pl. Br., 4:5-6; Declaration of

9    Julio Llamo ("Llamo Decl.") ¶ 30.)  Freedom is not a party to this action, but

10   Plaintiffs assert they currently own the recovery rights for the D.M. claim. (*Id.*)  To

11   support this, Plaintiffs rely in part on a Group Participation Agreement between

12   Freedom and Plaintiffs' purported assignor, Trinity Physicians, LLC ("Trinity"), to

13   show that Trinity received the recovery rights from Freedom such that it could then

14   assign these rights to Plaintiffs. (Pl. Br., 4:7-8.)

15          In other words, Plaintiffs allege the following assignment chain: Freedom

16   assigned to Trinity who assigned Plaintiffs. However, Plaintiffs' own documents

17   negate these assertions. Prior to Trinity assigning its rights to any Plaintiffs, Trinity

18   entered into a Group Participation Agreement with Freedom. In that Agreement,

19   *Trinity assigned to Freedom* "recovery, reimbursement or subrogation rights."

20   (Declaration of Julio Llamo ("Llamo Decl.") Exh. C § 3.23.1.)  Trinity did not receive

21   Freedom's recovery rights. To the extent Trinity assigned any rights to Plaintiffs, they

22   were exclusive of recovery rights because Trinity did not have those rights to assign.

23   And without recovery rights, Plaintiffs lack standing to sue on behalf of the D.M.

24   claim. *See MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d

25   1250, 1256 (S.D. Fla. 2016), appeal dismissed, 2017 WL 4386453 (11th Cir. Sept. 19,

26   2017).

27   ///

28   ///

7.

**1. Plaintiffs Have Not Demonstrated A "Legally Protected Interest"
in Recovery Rights Regarding J.R.'s Claim**

According to Plaintiffs, J.R.'s claim involves coverage and a failure to
reimburse involving Preferred Medical Plan, Inc. ("PMPI"). (Julio Llamo ("Llamo
Decl."), ¶ 10.)  Like D.M., in order to assert recovery rights for this claim, Plaintiffs
must show J.R.'s claim involves coverage under PMPI (i.e., concrete injury) and that
PMPI assigned its rights to Plaintiffs (i.e., legally protected interest). Plaintiffs have
failed to do so.

According to an "Eligibility Response" document that Plaintiffs produced in
discovery, J.R. became eligible for Medicare Part A on December 1, 1999, and he
enrolled in a the MAO, Preferred Care Partners, Inc. ("PCPI"), effective January 1,
2015. (Declaration of Christopher J. Lee ("Lee Decl."), Ex. C, J.R. Eligibility
Response).  Plaintiffs never assert that they received Preferred Care Partners, Inc.'s
recovery rights via assignment. (*Id.*)  Instead, Plaintiffs seemingly hope to recover for
the J.R. claim under their PMPI assignment, despite no indication that J.R. was
covered by PMPI, instead of PCPI. Though not outcome dispositive as discussed
below, the Court finds this is insufficient to confer standing.

Most importantly here, the Court finds that Plaintiffs have failed to show their
legally protected interest in this claim. The assignment chain for PMPI recovery rights
is as follows: PMPI conferred its recovery rights to MSP Recovery, LLC who
conferred its recovery rights to MAO-MSO Recovery II LLC, Series PMPI, a
segregated series of MSP Recovery Delaware LLC. (*See* Declaration of Charles E.
Whorton ("Whorton Decl."), Exh. B-6.) Neither MAO-MSO Recovery II LLC, Series
PMPI nor MSP Recovery Delaware LLC are named Plaintiffs in this action.[1] As such,

---

[1] The Court declines to treat "MAO-MSO Recovery II LLC, Series PMPI" as the
same entity as "MAO-MSO Recovery II, LLC" for purposes of standing, and
Plaintiffs have not given any indication that the two LLCs have shared rights for
recovery.

1  Plaintiffs have failed to show any ownership interest as it relates to the J.R. claim.

2  ## 2. The Remaining Unpled Exemplar Claims Cannot Confer

3  ## Standing.

4  Next, to the extent Plaintiffs attempt to procure standing from the additional

5  potential seven (7) exemplars of injury-in-fact in their briefing, the Court declines to

6  address the assertions because they are not pled in the Second Amended Complaints.

7  The Court "must examine [plaintiff's] original complaint to determine whether the

8  claim[s] alleged therein was one over which [the Court] had jurisdiction"—in this

9  case, only the D.M. and J.R. claims can be considered. *Morongo Band of Mission*

10  *Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1381 (9th Cir. 1988).

11  These unpled allegations cannot circumvent the requirement that standing exist when

12  the lawsuits were filed. *Lujan*, 504 U.S. at 571 n.4.

13  ### i.  The Other Assignments Do Not Show Named Plaintiffs Have the

14  ### Right to Sue.

15  Although the Court has already addressed the Trinity and PMPI assignments as

16  they relate to the D.M. and J.R. claims—and these two claims are the only ones tied to

17  an assignment in the SAC, the Court nonetheless has concerns regarding the validity

18  of the remaining assignments as discussed in Plaintiffs' Standing Briefing and will

19  address them in this Order.

20  First, the assignment chains are as follows, with the current right holder **bolded**

21  **and underlined**, based wholly on documentation provided by Plaintiffs:

22  - Verimed/VMIL assigned its rights to MSP Recovery, LLC who assigned its

23  rights to **Series 15-09-108, LLC**.  (*See* Wharton Decl., Exh. B-2.)

24  - EmblemHealth Services Company, LLC, Group Health Incorporated, and

25  Health Insurance Plan of Greater New York assigned its rights to Series 16-

26  08-483, a designated series of MSP Recovery Claims, Series LLC and MSP

27  Recovery, LLC and subsequently, MSP Recovery, LLC assigned its rights to

28  **Series 16-08-483.** (Wharton Decl., Exh. B-4.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Family Physicians Group assigned its rights to MSP Recovery, LLC who then assigned its rights to **Series 17-05-634**.  (Wharton Decl., Exh. B-5.)

While Plaintiffs may argue that these right holders are part of the series which is a Plaintiff in this case, it seems that courts ultimately reject this argument: "A 'series' entity is similar to a corporation with subsidiaries, and parent corporations lack standing to sue on behalf of their subsidiaries." *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.,* 2018 WL 5112998 at *12 (S.D. Fla. Oct. 19, 2018) (internal citations omitted). And other courts have warned Plaintiffs that their attempts to sue on behalf of series LLCs such as Series 15-11-371, LLC "is an abuse of corporate form." *MSP Recovery Claims, Series LLC v. New York Central Mut. Fire Ins. Co.*, 2019 WL 4222654, at *5–6 (N.D.N.Y. Sept. 5, 2019).

Next, regarding the Health First Administrative Plans ("HFAP") assignment, it is unclear who currently owns these rights. HFAP assigned its rights to MSP Recovery, LLC. (Wharton Decl., Exh. B-3.) Next, MSP Recovery, LLC assigned its rights from Health First Health Plans, Inc. ("HFHP") to Series 16-05-456, a designated series of MSP Recovery Claims, Series LLC. (*Id.*) There is no evidence that MSP Recovery, LLC assigned its HFAP rights to a named Plaintiff in this action. Even if the Court were to assume that HFAP and HFHP were the same entity, it still has concerns, as discussed above, that Series 16-05-456 is not a named Plaintiff in this action.

Regardless, the Court finds that the assignments above are not outcome determinative because they are not tied to any particularized injury-in-fact in the Second Amended Complaint. *See Lujan*, 504 U.S. at 571 n.4 (holding that unpled allegations cannot confer standing where no standing is alleged at the time the complaint was filed). In other words, these assignments are just that—a right to recover—and Plaintiffs have failed to tie them to an concrete injury as is required to

10.

demonstrate standing.[2]

## C. Dismissal Without Prejudice

The Ninth Circuit has held that dismissal for lack of subject matter jurisdiction should be without prejudice. *Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004). As such, the Court dismisses for lack of standing without prejudice. Finally, the Court notes that Plaintiffs have misrepresented their assignment rights to the Court at least as it relates to Trinity and HFAP based on Plaintiffs' own evidence and as discussed above. Once again, Plaintiffs seemingly "play[] fast and loose with facts, corporate entities, and adverse judicial rulings" as other courts have experienced. *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018). The Court cautions Plaintiffs about the potential consequences of this continued behavior—both as attorneys of law and parties appearing before this Court.

## V. CONCLUSION

For the reasons stated above, the Court finds it lacks subject matter jurisdiction and **DISMISSES** this action. In light of the dismissal, all pending motions are **DENIED AS MOOT**.

IT IS SO ORDERED.

Dated: August 12, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

---

[2] The Court also notes that the same assignment issues exist in the Trinity claims—currently Series 15-11-371, LLC, a series of MSP Recovery Claims, Series LLC owns the Trinity rights. (*See* Wharton Decl., Exh. B-1.) The current right holder is not a named Plaintiff in this action.